UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BRENT M. LEE, PAUL D. FANNIN, and CHELSEA STONE<br><br>    Defendants. | CRIMINAL NO. 7:17-12-KKC<br><br>**OPINION AND ORDER** |

This matter is before the Court on several motions to dismiss charges (DE 38, 39, 40) in the indictment filed by the defendants.

**I. Background**

Defendant Brent M. Lee was a loan officer at Bank Branch and Trust Company (BB&T). According to the indictment, BB&T prohibited Lee from making any further loans to defendant Paul D. Fannin. Thus, Lee and Fannin devised a scheme by which Fannin's daughter, defendant Chelsea Stone, would apply for a $100,000 loan in her name and give the proceeds to Fannin for his own use. Later, the government alleges, the defendants modified the loan so that Stone would receive an additional almost $150,000 in bank funds that she ultimately gave to Fannin for his personal use. With regard to each of these transactions, the government alleges that Stone pledged security for the loans that she and Lee knew she did not own.

All of the defendants are charged with conspiring to commit bank fraud. Defendants Lee and Fannin are also charged with two counts of committing bank fraud. Lee is charged with two counts of misapplying bank funds while employed by the bank and four counts of issuing the loan with intent to defraud BB&T. Fannin is charged with one count of money laundering related to the proceeds of the loan. Stone is charged with three counts of making a false

statement on a loan application.

## II. Motions to dismiss

### A. Fannin's motion to dismiss on the basis that he relied on Lee's advice and authorization of the allegedly fraudulent transactions (DE 36)

Fannin has filed a motion to dismiss in which he appears to argue the conspiracy and bank fraud charges against him should be dismissed because he did not have the requisite intent. Fannin has more recently filed a motion for rearraignment in which he states he wishes to plead guilty to the charges. Nevertheless, his motion to dismiss must be resolved because defendant Stone, who is also charged with conspiracy to commit bank fraud, has moved to join the motion (DE 37) and the Court will permit her to join it.

With regard to the conspiracy charge, Fannin argues that he relied on Lee's advice that Fannin should ask his daughter to apply for the loan with the understanding that the funds would actually be used by Fannin to finish an ongoing construction project. In an affidavit, Fannin states that he did not intend to deceive anyone. Instead, he followed Lee's advice, believing that Lee had superior knowledge about banking.

With this argument, Fannin appears to be challenging whether there is sufficient evidence to support the charge in the indictment that he acted with intent to defraud. Whether a defendant acted with the requisite intent to commit bank fraud, however, is a factual matter that a jury must decide. *United States v. Reaume*, 338 F.3d 577, 583 (6th Cir. 2003).

The court will instruct the jury that the indictment is not evidence and that the prosecution must prove every element of each offense beyond a reasonable doubt. If the prosecution is unable to do so, the defendant is entitled to an acquittal. "However, the prosecution's evidence is tested at trial, not in a preliminary proceeding." *United States v. Short*, 671 F.2d 178, 183 (6th Cir.1982).

"When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial." *Id*. "[A] defendant may not challenge an indictment on the ground that it is not supported by sufficient evidence." *United States v. Levin*, 973 F.2d 463, 468, n.2 (6th Cir. 1992).

Fannin also appears to argue that he cannot "as a matter of law" be deemed to have committed fraud against the bank because it was a bank official – Lee – who authorized the transactions at issue. Indeed, Fannin argues, Lee not only approved of the transactions but "instigated and . . . assumed complete control and managed" them. (DE 36-1, Mem. at 3.)

To the extent that Fannin argues a bank cannot be defrauded as a matter of law where an employee approves of the fraudulent transaction at issue, that is incorrect. The "bank as an entity" is the victim of the fraud. *United States v. Abboud*, 438 F.3d 554, 593 (6th Cir. 2006), Thus, Lee's approval of the allegedly fraudulent transactions does not relieve Fannin or Stone of criminal liability for them. *Id*. (citing *United States v. Rackley*, 986 F.2d 1357, 1361 (10th Cir.1993) ("Defendant confuses the notion of defrauding a federally insured bank with the idea of defrauding its owner or directors. It is the financial institution itself—not its directors or agents—that is the victim of the fraud the statute proscribes.") *See also United States v. Selgjekaj,* 678 F. App'x 379, 383 (6th Cir.), *cert. denied*, 138 S. Ct. 168 (2017) ("The fact that Raguz regularly assisted others in defrauding his employer, the Credit Union, does not mean that Defendant did not also defraud the Credit Union with Raguz's help. It is the Credit Union, not its agent, Raguz, who is the victim of bank fraud.")

For all these reasons, Fannin's motion to dismiss (DE 36) on the basis that he relied on Lee's advice and authorization of the fraudulent transactions must be denied.

## B. Defendant Lee's motion to dismiss charges of misapplying bank funds (DE 38) for failure to allege necessary facts

Among the charges against defendant Lee is that he violated 18 U.S.C. § 656. That statute prohibits bank officers and employees from embezzling, abstracting, purloining, or willfully misapplying bank funds. In his motion to dismiss these charges, defendant Lee argues that the indictment does not contain the essential elements of the crime of "willfully misapplying bank funds." The United States' response addresses the same provision of the statute and only that provision. Thus, though the indictment charges that Lee violated the statute by embezzling, abstracting, purloining, *and* willfully misapplying bank funds, the Court assumes that the United States intends to prove that Lee violated the statute only by misapplying bank funds.

An indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). To be sufficient, an indictment generally must "fully, directly, and expressly. . . set[ ] forth all the elements necessary to constitute the offense intended to be punished." *United States v. Schaffer*, 586 F.3d 414, 422 (6th Cir.2009) (quoting *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir.2005)). "In particular, the indictment must: (1) set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces, and (2) be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *Id*. (internal quotations and brackets omitted.) "An indictment as drafted is presumed sufficient if it tracks statutory language, cites the elements of the crimes charged, and provides approximate dates and times." *United States v. Chichy*, 1 F.3d 1501, 1504 n.3 (6th Cir.1993).

In his motion to dismiss, Lee argues that, for a § 656 charge, the government must allege

that Lee "personally gained financially from the loan transactions." (DE 38-1, Mem. at 5.) Lee's argument is incorrect. In *United States v. Woods*, 877 F.2d 477 (6th Cir. 1989), the Sixth Circuit held "proof of actual gain to the defendant, or loss to the bank, is not required" for a § 656 violation. *Id*. at 480. Accordingly, actual gain to the bank officer is not an element for this charge and need not be alleged in the indictment.

There are two elements to a willful-misapplication charge against a bank employee: willful misapplication of bank funds and intent to injure or defraud the bank. *Woods*, 877 F.2d at 479; *United States v. Tevis*, 593 F. App'x 473, 477 (6th Cir. 2014). *See also Bates v. United States*, 522 U.S. 23, 30 (1997) ("The Courts of Appeals unanimously agree that § 656 requires the Government to prove that the defendant acted with an intent to 'injure or defraud' the bank or 'deceive' a bank officer even though the statute, on its face, contains no such element.")

As to the first element, the misapplication of bank funds is the conversion of the funds by a bank employee or officer for his own use or for the use of anyone other than the bank. *United States. v. Britton*, 107 U.S. 655, 666 (1883); *United States v. Krepps*, 605 F.2d 101, 103 (3d Cir. 1979). "The gist of this critical element of the offense is the withdrawal of funds, however temporarily, from the possession, control, or use of the bank." *United States v. Duncan*, 598 F.2d 839, 860 (4th Cir. 1979).

As to the intent element, the intent to injure or defraud the bank may be inferred with evidence that Lee acted knowingly or with reckless disregard of the bank's interests and if the natural result of his conduct would be to injure or defraud the bank. *Woods*, 877 F.2d at 480; *United States v. Hoffman*, 918 F.2d 44, 46 (6th Cir. 1990); *Krepps*, 605 F.2d at 104.

Here, the indictment charges that Lee was a loan officer for BB&T and that, on or about October 2, 2014 and January 2, 2015, he violated § 656 by causing the bank to fund a loan to Stone, knowing that Stone would not receive the funds from the loan and also knowing that

5

Stone pledged security for the loan that did not actually belong to her. (DE 1, Indictment, Counts 4, 5.)

This sets forth the two elements of the offense: misapplication of bank funds and intent to injure or defraud the bank. It alleges that Lee misapplied bank funds by authorizing a loan in Stone's name, knowing that the security pledged for the loan did not belong to her. The indictment further alleges that these actions were undertaken with an intent to defraud the bank.

In his reply brief, Lee argues that the indictment is deficient because it does not allege that Stone is a "fictitious debtor" or that she is "not responsible for repayment of the loans in question." (DE 47, Reply at 2.) These, however, are not essential elements of a § 656 charge. In cases where a bank officer secures a loan in the name of one party knowing the funds are intended for a third party, the fact that the nominee debtor does not exist or the fact that she is incapable of repaying the loan or has no intent to repay the loan would certainly be factors in determining whether the bank employee intended to injure or defraud the bank in authorizing the loan. This is because, in such situations, "there was little likelihood or expectation that the named debtor would repay" and the "knowing participation of bank officials in such loans could consequently be found to have a 'natural tendency' to injure or defraud their banks." *Krepps*, 605 F.2d at 105 (*United States v. Gens*, 493 F.2d 216, 222 (1st Cir. 1974)).

The required intent to defraud may also be found, as it was in *Krepps* and *Woods*, where the loan officer authorizes a loan in the name of another but then the loan officer himself receives the loan proceeds. This is true even if the named debtor has the ability and intention to repay the loan. In *Krepps*, the Third Circuit explained that, in such situations, "[a] jury might plausibly deduce that the bank officer, by channeling the funds through another party,

sought to conceal from the bank his own interest in the transaction and thereby to circumvent the barrier imposed by both [state] statute and the bank's own regulations to the bank's making the particular loan directly to him."*Krepps*, 605 F.2d at 106. "Given these severe restrictions on the ability of banks to make loans to their own officers, the officer has committed a fraud upon the bank since the loan might not have been approved had the artifice been disclosed on the face of the loan application." *Id*. "Moreover, by concealing the fact that he is the real beneficiary of the loan, the bank officer has deceived the other bank officers and agents who are appointed to examine the affairs of the bank and who are entitled to be kept informed of all loans to bank officers so that they may properly fulfill their duties." *Id*.

Here, however, the government has alleged that Lee knew that Stone did not actually own the property she pledged as collateral for the loan or the loan modification. As discussed, this sufficiently sets forth the "intent" element of the § 656 charge. Both Counts 4 and 5 specifically allege that Lee knew "the security pledged did not belong to Stone." Accordingly, the government need not also allege that Stone could not repay the loan or did not intend to repay it or that Lee himself received the loan proceeds.

For all these reasons, Lee's motion to dismiss (DE 38) the § 656 charge against him will be denied. Lee also argues that, if the Court dismisses the § 656 charge against him, the Court must necessarily dismiss the remaining charges against him. Because the Court has not dismissed the § 656 charge, this portion of the motion will also be denied.

### C. Lee's motion to dismiss multiplicitous charges (DE 39)

Lee appears to move to dismiss all nine counts against him except for the conspiracy charge set forth in Count 1. He argues, "In each instance alleged in Counts 2 through 9, the government impermissibly created separate charges for each act in the execution of the single scheme set forth" in the indictment. (DE 39-1, Mem. at 6.)

As an initial matter, "[o]ne act may violate two or more statutes and constitute independent offenses." *United States v. Maggitt*, 784 F.2d 590, 599 (5th Cir.1986). "The fact that a defendant is charged twice in an indictment for the same conduct does not necessarily mean he is being charged with the same offense." *Id*. Thus, the charges are not multiplicitous simply because they are based on the same conduct.

It is true that the government cannot charge the same offense multiple times in an indictment. This is called "multiplicity." The reason multiplicity is prohibited is because a defendant cannot be punished twice for the same crime. *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008). To determine if the same offense is charged twice in an indictment, the Court must first look to "whether Congress intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F.2d 533 (6th Cir.1980) (quoting *Jeffers v. United States*, 432 U.S. 137, 155 (1977)). If congressional intent cannot be determined, the Court should then look to whether each count at issue "requires proof of a fact which the other does not." *United States v. Davis*, 306 F.3d 398, 417 (6th Cir.2002) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

Lee's argument that Counts 2 through 9 must be dismissed because they are multiplicitous of the conspiracy charge fails. "It is well settled that conspiracy to commit an offense is a separate and distinct crime from the commission of the substantive offense." *Beckman v. United States*, No. 89-5424, 890 F.2d 416 (6th Cir. 1989); *United States v. Lupino*, 480 F.2d 720, 724 (8th Cir. 1973)("And the commission of the substantive offense and the conspiracy to commit it are separate and distinct offenses.") Conspiracy to commit bank fraud is not the same offense as any other count in the indictment because it requires an agreement among the alleged conspirators. No other count does.

This is also true when a defendant is charged with the substantive offense under a theory

8

of aiding and abetting. *United States v. Rodriguez*, 858 F.2d 809, 817 (1st Cir. 1988); *United States v. Peterson*, 524 F.2d 167, 174 (4th Cir. 1975); *United States v. Benner*, 442 F. App'x 417, 421 (11th Cir. 2011). "[A]greement remains the essential element of the crime [of conspiracy], and serves to distinguish conspiracy from aiding and abetting which, although often based on agreement, does not require proof of that fact." *Iannelli v. United States*, 420 U.S. 770, 777 n. 10 (1975).

In support of his argument that the indictment is multiplicitous, Lee cites *United States v. Heath*, 970 F.2d 1397 (5th Cir. 1992) and *United States v. Lemons*, 941 F.2d 309 (5th Cir. 1991). In those cases, the defendants were charged with and convicted of multiple counts of committing bank fraud in violation of 18 U.S.C. § 1344. The defendants argued that the multiple bank fraud charges were multiplicitous of each other, not of other counts. Accordingly, *Heath* and *Lemons* implicate only the two bank fraud charges in the indictment – Counts 2 and 3.

In *Lemons*, the issue was whether the defendant could be charged with a separate violation of the bank-fraud statute for *each act* committed in execution of the scheme to defraud or whether the statute permits charging only for each *execution* of such a scheme.

In determining that § 1344 permits charging only the *execution* of a scheme and not each act in furtherance of it, the court distinguished the bank fraud statute from the mail and wire fraud statutes noting that, by its plain language, the bank fraud statute prohibits the *execution* of the scheme. *Lemons*, 941 F.2d at 317. In contrast, the mail and wire fraud statutes expressly punish each use of the mail or wire in furtherance of the fraudulent scheme. *Id*. at 318. The court determined that, though the defendant took multiple acts in furtherance of the scheme, there was only one *execution* of the scheme. *Id*. Thus, the defendant could be charged with only one count of bank fraud. *Id*.

Likewise, in *Heath*, the issue was whether the defendant could be charged with two counts of bank fraud that were based on the same transaction. The court determined that one of the charges had to be dismissed as multiplicitous because there was only one execution of a scheme to defraud even though the scheme involved two loans. *Heath*, 970 F.2d at 1402.

Count 2 charges that Lee aided and abetted Fannin in executing a scheme to obtain $100,000 of BB&T's funds by fraudulent means. Count 3 charges that Lee aided and abetted Fannin in executing a scheme to obtain $149,212.50 in bank funds. If these two counts involve only one *execution* of a scheme to defraud, then Lee could not be punished for two violations of the statute.

In determining whether actions constitute multiple *executions* of a fraudulent scheme or just actions in furtherance of one executed scheme, courts have looked at a variety of factors including the "ultimate goal of the scheme, the nature of the scheme, the benefits intended, the interdependence of the acts, [and] the number of parties involved." *United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir. 1994). In addition, courts have looked to whether the documents involved in the actions were submitted together; whether the acts were planned together; whether the acts alleged were required for the ultimate goal of the scheme; whether one act "could not have succeeded without the other;" and whether the actions created a new gain for the defendant or more risk for the bank. *Id.*

The Tenth Circuit has held, "Each time an identifiable sum of money is obtained by a specific fraudulent transaction, there is likely to be a separate execution of the scheme to defraud." *United States v. Gallant*, 537 F.3d 1202, 1226 (10th Cir. 2008) (quoting *United States v. Brandon*, 17 F.3d 409, 422 (1st Cir.1994)).

Counts 2 and 3 of the indictment allege two executions: one occurring on October 2, 2014 and the other occurring on January 6, 2015. As to the October 2, 2014 execution, the

indictment alleges that Fannin and Lee agreed to submit a loan application in Stone's name that falsely stated Stone would receive the loan proceeds. The indictment alleges that the money was actually deposited into Fannin's account and he used the proceeds to pay for personal expenses. (DE 1, Indictment ¶¶ 7-8.)

As to the January 6, 2015 execution, the indictment alleges that Lee modified the terms of the original $100,000 loan in a manner that allowed Stone to receive an additional almost $150,000. The indictment alleges that Stone ultimately gave Fannin $144,000 of this money, which he used for personal expenses. (DE 1, Indictment ¶¶ 10, 11.) Importantly, the indictment alleges that, with regard to both transactions, Stone signed an agreement pleading a CD as security for the loan and that Lee knew Stone did not actually own the CD and had no right to use it as security for the loan.

Without more information about the factual basis for each of the bank fraud counts, the Court cannot determine whether Counts 2 and 3 involve separate "executions." The Court assumes that the goal of the scheme was to give bank funds to Fannin after the bank made clear it would make no further loans to him. If so, it would seem that both bank-fraud counts share the same goal. Both counts involve the same actors. It further appears that the acts involved in both counts were interdependent; the loan "modification" could not have occurred without the original loan.

On the other hand, it appears that separate documents were required with regard to the loan and the loan modification and that each set of documents allegedly contained the misrepresentation regarding the security pledged for the loan. Further, at this point, there is no allegation or indication that the loan and loan modification were planned together. And both the loan and the loan modification resulted in a separate disbursement of funds, alleged gain to Fannin, and risk to the bank.

Where the multiplicity analysis is fact intensive as here, the best course is to deny this pretrial motion and permit Lee to raise this issue again after the government has developed the factual basis for these counts at trial. *See United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999) ("We agree with the government that multiplicity claims are better sorted out post-trial. The factual issues . . . need development at trial, and attempting to decide such issues pre-trial would be premature.")

**III.  Conclusion**

For all these reasons, the Court hereby ORDERS as follows:

1) Defendant Stone's motion (DE 37) to join defendant Fannin's motion to dismiss is GRANTED;

2) Defendant Fannin's motion to dismiss (DE 36) is DENIED;

3) Defendant Lee's motion to dismiss charges of misapplying bank funds (DE 38) for failure to allege necessary facts is DENIED; and

4) Defendant Lee's motion to dismiss Counts 2 and 3 (DE 39) as multiplicitous is DENIED as premature with leave for Lee to reassert the motion after the government has presented its case in chief. The motion to dismiss other charges as multiplicitous (DE 39) is DENIED.

Dated January 22, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY